Higginbotham, Jr., Circuit Judge, dissented with opinion.

**Granville B. TAYLOR, Jr., Appellant,**

v.

**FORD MOTOR COMPANY, and Local Union 980, UAW (United Automobile, Aerospace and Agriculture Implement Workers of America).**

No. 84–5338.

United States Court of Appeals, Third Circuit.

Argued Jan. 17, 1985.

Decided May 9, 1985.

Rehearing and Rehearing In Banc Denied June 11, 1985.

Stephen E. Klausner (Argued), Klausner & Hunter, Somerville, N.J., for appellant.

Betsey A. Engel (Argued), Jordan Rossen, Gen. Counsel, M. Jay Whitman, Associate Gen. Counsel, Nancy Schiffer, Asst. Gen. Counsel, Detroit, Mich., Paul J. Giblin, Michael P. Kemezis, Giblin & Giblin, Hackensack, N.J., for appellee, UAW Local 980.

Before HUNTER and HIGGINBOTHAM, Circuit Judges, and KELLY,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

█ The principal question raised by this appeal is whether the six-month limitations period of section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b) (1982), applies to a hybrid duty of fair representation-breach of contract action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, where the plaintiff-employee is seeking to enforce, rather than vacate, an arbitrator's decision. We construe the Supreme Court's decision in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), as mandating application of the six-month limitations period to all section 301 actions that are predicated upon a union's breach of its duty of fair representation, and implicate no countervailing federal policy. We will therefore affirm the district court's order of summary judgment in favor of United Auto Workers Local 980[1] and against appellant Granville Taylor in his section 301 action.

### I

In 1969, Ford Motor Company laid Taylor off from his position as a pumpman, and did not recall him until May, 1976. One month later, an arbitrator determined that Ford had breached its collective bargaining agreement with Local 980 by failing to notify Taylor of a vacancy that had occurred in his job classification in 1973, and by failing to recall him at that time. The arbitrator awarded Taylor pension rights and benefits from May 1973. When the UAW/Ford Retirement Board denied Taylor these retroactive pension credits, he sought the assistance of Local 980 in enforcing the arbitrator's award. However, on December 4, 1978, the president of the Local wrote Taylor that the union would take "no further action" in the matter. *See Taylor v. Ford Motor Co. ("Taylor I")*, 703 F.2d 738, 740–41 (3d Cir.1983).

In 1980, Taylor brought his section 301 suit against Ford and Local 980 in the United States District Court for the District of New Jersey. The district court dismissed Taylor's action against Ford on the ground that it was time-barred by New Jersey's 90-day limitation period for confirmation of an arbitral award. On the same ground, the district court subsequently granted summary judgment in favor of Local 980. In March 1983, on appeal from this latter determination, this court determined that New Jersey's six-year statute of limitations for contract actions applied to Taylor's suit, heeding the Supreme Court's directive in *AFL–CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), that courts in section 301 actions are to apply the most analogous state statute of limitations. *See Taylor I*, 703 F.2d at 741, 745. Taylor's

---

* Honorable James McGirr Kelly, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. The co-defendant, Ford Motor Company, has not been a participant in the case since it obtained summary judgment in 1981. *See Taylor v. Ford Motor Co.*, 703 F.2d 738, 741 (1983).

action was then remanded to the district court. *Id.* at 745. However, in June 1983, the Supreme Court announced its decision in *DelCostello,* which held that the appropriate limitations period for a hybrid section 301 action is the six-month one contained in the NLRA. *See* 103 S.Ct. at 2293–94. Relying on *DelCostello,* the district court once again awarded summary judgment in favor of Local 980.

## II

In *DelCostello,* an employee sought to vacate an arbitrator's award. Taylor's principal argument on this appeal is that *DelCostello* is inapplicable where, as here, an employee seeks in a section 301 action to enforce an arbitrator's award. We do not think that *DelCostello* can be so limited.

The basis of *DelCostello* was the Court's recognition that state actions dealing with contracts or commercial arbitrations are at best imperfectly analogous to a hybrid section 301 suit. *Id.* at 2291. Such a hybrid action is possible only where the union has breached its duty of fair representation in handling the employee's grievance against the employer. *See Hines v. Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Because a union's breach of its duty of fair representation bears a "family resemblance" to an unfair labor practice under the NLRA, the policy determination underlying the NLRA's six-month limitations period—that the need for expeditious dispute resolution in the labor arena and for uniform procedural treatment of similar claims weighs against any need employees might have for lengthy periods in which to vindicate their rights—also applies to hybrid section 301 actions. *See DelCostello,*

103 S.Ct. at 2294. Thus the Court concluded that the NLRA's six-month period applies to hybrid actions.

■ *DelCostello* draws no explicit distinction between employee actions seeking vacation of arbitral decisions and those seeking enforcement. Nor can we conceive of any convincing reason for such a distinction. The "family resemblance" of a union's breach of its duty of fair representation to an unfair labor practice is not vitiated merely because the breach consists of a failure to enforce an arbitral decision rather than a failure to represent the employee's grievance adequately in the arbitral forum. Wherever this "family resemblance" exists, the need for rapid resolution of labor disputes and for uniformity mandates application of the NLRA's six-month limitation period, absent some countervailing federal policy. *Compare Local Union 1397, USWA v. USWA, AFL–CIO,* 748 F.2d 180 (3d Cir.1984) (NLRA's six-month limitations period applies to an action brought under section 102 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 412) *with Adams v. Gould, Inc.,* 739 F.2d 858 (3d Cir.1984) (limitations period of ERISA, rather than that of NLRA, applies to hybrid section 301 lawsuit for employer's breach of a pension agreement), *cert. denied,* —— U.S. ——, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). We hold, therefore, that the six-month limitations period of section 10(b) of the NLRA applies to a hybrid section 301 action to enforce an arbitration award.[2]

## III

Taylor contends that, even if *DelCostello* applies to 301 actions generally, it may not be applied retroactively to his action. This

---

**2.** Taylor argues that this holding will place this court in conflict with the First and Fifth Circuits, which have held that *DelCostello* does not apply to section 301 actions brought by unions to enforce arbitration awards against employers. *See Derwin v. General Dynamics Corp.,* 719 F.2d 484 (1st Cir.1982); *IUE v. Ingram Mfg. Co.,* 715 F.2d 886 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984).

We disagree. *Derwin* and *Ingram* were straight, non-hybrid, section 301 actions, to which, the Supreme Court has indicated, the rule of *Hoosier Cardinal* still applies. *See DelCostello,* 103 S.Ct. at 2289, 2291; *Ingram,* 715 F.2d at 888. Here, it is precisely the hybrid nature of Taylor's lawsuit that mandates the application of *DelCostello.*

contention need not detain us long. We have already decided, in *Perez v. Dana Corp.,* 718 F.2d 581 (3d Cir.1983), that *DelCostello* applies retroactively. Having just held that *DelCostello* is not materially distinguishable from this case, there is no need to repeat the retroactivity analysis we undertook in *Perez.* We hold that *DelCostello* is applicable to Taylor's lawsuit.

## IV

■■■ Finally, Taylor contends that the district court erred in holding that his cause of action accrued on December 4, 1978, when he was notified that Local 980 would not assist him in seeking enforcement of the arbitrator's award. The union must have allegedly breached its duty of fair representation before an employee may bring a hybrid section 301 action. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Thus, where an employee seeks to enforce an arbitration award, his hybrid section 301 action accrues either when the union unequivocally refuses to assist him, or, if no such refusal occurs, when the statute of limitations on the union's action against the employer has run. *See Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corp.,* 736 F.2d 896, 902 (3d Cir.1984); *Taylor I,* 703 F.2d at 743. Here, Taylor did receive an unequivocal refusal on December 4, 1978, when Local 980 notified him that "the Union [had gone] its last mile, and there would be no further action ... taken on the matter...." Letter from William Beckham, President of Local 980, to Granville Taylor, *quoted in Taylor I,* 703 F.2d at 740. Therefore, the district court correctly concluded that Taylor's cause of action accrued on that date, and was time-barred when he brought it in November 1980, nearly two years later.

## V

For the foregoing reasons, the judgment of the district court is affirmed.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting.

Relying on *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the majority holds that appellant's hybrid section 301/unfair representation suit to *enforce* an arbitration award is barred by the NLRA's six-month limitations period for unfair labor practice claims. As the majority notes, however, *DelCostello* involved a hybrid suit to *vacate* an arbitration award. Though the majority cannot "conceive of any convincing reason" to distinguish suits to vacate arbitration awards from suits to enforce, I believe that such a distinction has—for cogent reasons—long been recognized by state and federal law, with the result that limitations periods for suits to enforce are generally longer than those governing suits to vacate. *DelCostello* does not require that we eviscerate this distinction. I therefore respectfully dissent.

The Supreme Court in *DelCostello* made it quite clear that their holding was not to be extended mechanically:

> We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy.... Nevertheless, when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law.

462 U.S. at 171–172, 103 S.Ct. at 2294. Thus, we must look to the "federal policies at stake" and the "practicalities of litigation" before we may conclude that the NLRA's six-month limitations period is a "significantly more appropriate vehicle for interstitial lawmaking" than the six-year state limitations period that we found to be applicable to appellant's cause of action in *Taylor I. See also Adams v. Gould, Inc.,*

739 F.2d 858, 867 (3d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). In carrying out this analysis, I think we must be cognizant of the fact that the practical effect of borrowing the federal rather than the state statute of limitations in *DelCostello* was to extend (from three to six months) the period in which an employee could bring a suit to vacate, whereas here the effect would be to drastically reduce (from six years to six months) the applicable limitations period. I believe that both the practicalities of litigation and the federal policies at stake militate in favor of a significantly longer period for actions to enforce arbitration awards than the six months allowed for bringing an action to vacate under *DelCostello.*

When an employee seeks to vacate an arbitration award in a section 301/unfair representation hybrid suit, the gravamen of the unfair representation claim will generally be the union's mishandling of grievance and arbitration procedures, and the cause of action will accrue at a fairly definite date—the date the adverse arbitration decision is issued. *Cf. DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294. In a suit to enforce, however, the gravamen of the complaint will be the union's conduct *after* the arbitration process is complete, and the claim will not accrue until the futility of further union appeals becomes apparent or should have become apparent. *Scott v. Local 863,* 725 F.2d 226, 229 (3d Cir.1984). Judge Becker has recently described the dilemma the employee confronts:

> The problem is that, unlike other situations where the twin defenses of failure to exhaust and the statute of limitations combine to give the litigant a narrow window in which to file suit, here there is no guarantee that statutes, regulations, or other form of clear, written notice will exist that warn the plaintiff of his peril.... [U]nion officials may well be equivocal or contradictory in their communications to dissatisfied members and may send such communications through persons within the internal union hierarchy whose authority to bind the union is at best hazy. As a result, the potential suitor will not know when exhaustion is futile.

*Scott,* 725 F.2d at 230 (concurring opinion).

*Scott* was a case where the union refused to bring a grievance to arbitration, and this court applied *DelCostello* to the employees' hybrid action. I submit, however, that in cases such as this one—where the grievance has been arbitrated and the employee has won—the "whipsaw" Judge Becker described becomes intolerable and a more generous limitations period is needed. Where the union has assisted an employee in successfully processing a grievance through to arbitration, it is only natural that the employee will continue to rely on the union rather than the courts, for assistance in enforcing the award, even in the face of evidence that the union may go no further. As we said in *Taylor I:*

> It is the union ... to whom Taylor looked to protect his recall interest. The union provided the arbitration process procedure as a means for a member to resolve a grievance over such an interest. After a union member exhausts the union's procedure for dispute resolution through arbitration, it is reasonable for that member to expect the union to follow the necessary steps to conclude the dispute.

703 F.2d at 743.

The employee's dilemma is well-illustrated by the present case. Even assuming that the majority is correct in holding that appellant's claim accrued when he received the letter from the Local president stating that the union would go no further, it is apparent that he continued to pursue internal appeals in good faith. There is evidence of record to indicate that appellant could reasonably have believed that the International might take a different view of the matter. This suit was filed shortly after it became apparent that the International would not intercede. The longer limitations period afforded by state law would mitigate the consequences of erroneously relying—as did the appellant—on the union's continued efforts, by opening the section 301/unfair representation "window" somewhat wider. The window should not be precipitously closed on employees who, having won the first battle

side-by-side with their union—and often without the aid of independent counsel—fail to appreciate that their union has suddenly deserted them.

The policies underlying federal labor law point to the same result. The Court in *DelCostello* emphasized the "national interests in stable bargaining relationships and finality of private settlements," 103 S.Ct. at 2294 (quoting *United Parcel Service v. Mitchell*, 451 U.S. 56, 70, 101 S.Ct. 1559, 1567, 67 L.Ed.2d 732 (1980)). Stable bargaining relationships require, among other things, that all parties abide by arbitration awards. *See Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corporation*, 736 F.2d 896, 901 (3d Cir.1984). Thus, actions to enforce stand on a very different footing from actions to vacate. The finality of private settlements, which is undermined by actions at law to vacate, is actually promoted by the availability of actions to compel compliance. Indeed, achieving "finality" is a preeminent goal of *all* arbitration—whether commercial, labor, or any other—and in all of these contexts actions to enforce have been accorded more dignity, in the form of longer limitations periods, than actions to vacate. *See e.g.*, 9 U.S.C. §§ 9, 12 (1982) (one year to confirm award, three months to vacate); Uniform Arbitration Act §§ 11, 12 (1978) (no limitation on confirmation, ninety days to vacate); *Taylor I* (under New Jersey law six-year breach of contract limitations period applies to confirmation, ninety-day limitation on actions to vacate). Thus, the "analogy" between actions to enforce commercial arbitration awards and actions to enforce labor arbitration awards is much stronger than the analogy between actions to vacate. Further, I believe that in the context of enforcing arbitration awards, the national interests in stable bargaining relationships and the finality of private settlements override the interests in "expeditious dispute resolution in the labor arena and ... uniform procedural treatment of similar claims" that the majority emphasizes.

For the foregoing reasons I conclude that the *DelCostello* rule should not be applied to hybrid actions to enforce an arbitration award, and for the reasons given in this court's opinion in *Taylor I*, I would hold that appellant's claim against Local 980 is not time barred.

### SUR PETITION FOR REHEARING

Before ALDISERT, Chief Judge, SEITZ, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON and MANSMANN, Circuit Judges.

The petition for rehearing filed by

Appellant Granville B. Taylor, Jr., in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

Judge Gibbons would grant the petition for rehearing.

Judge Higginbotham votes for rehearing in banc for the reasons noted in his dissent.

Judge Becker would have granted rehearing to decide the question whether a hybrid section 301/unfair representation suit to enforce rather than vacate an arbitration award is barred by the NLRA's six-month limitations period for unfair labor practice claims.