**CLARENCE FRASER, JEAN THELEMAQUE, ANTONIO RODRIGUEZ, and CHRISTIAN FARRELLY, Plaintiffs**

**v.**

**LONNIE JAMES, FREDERICK JOSEPH, GERALD JACKSON, RONALD DAVIS, NOEL EUBEZE, and the STEEL WORKERS OF AMERICA, LOCAL UNION NO. 8526,** Defendants

Civil No. 1986/123

District Court of the Virgin Islands

Div. of St. Croix

March 9, 1987

CORNELIUS EVANS, ESQ., St. Croix, V.I., *for plaintiffs*

JOHN R. COON, ESQ., St. Croix, V.I., *for defendants*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

The question we face today is whether the six-month statute of limitations embodied in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1976), is applicable to a union member's action against his union for discriminatorily denying him strike funds due under the union's constitution. We hold that it is, and we dismiss the plaintiffs' complaint.

## I. FACTS

This action arises out of the eleven-month lockout at the oil refinery of Hess Oil Virgin Islands Corporation ("HOVIC") which began in April 1984. The plaintiffs are or were undisputed members of the United Steelworkers of America ("Union"), Local No. 8526 ("local") who were embroiled in the lockout.

As we read the plaintiffs' complaint, the gravamen of their actions is their allegation that the local's representatives discriminatorily denied them strike funds because the plaintiffs refused to picket during the lockout.[1] Complaint, Count II, ¶ 4. This, the plaintiffs assert, resulted in the breach of the union's duty to fairly represent them, Complaint, Count III, and a violation of the international's constitution amounting to a debt due. Complaint, Count I, ¶ 14. The plaintiffs bring this action, without pleading a jurisdictional basis for their claim,[2] against the local and the individual defendants.

---

[1] Unfortunately, neither side supplied the Court with documentation of the union's duty under its constitution with respect to strike funds. The defendants, however, do not challenge the complaint in this regard. Thus, we take these allegations as true.

[2] Under Fed. R. Civ. P. 8(a), a failure to include a short and plain statement of the jurisdictional basis of a claim, normally requires dismissal unless the defect can be corrected by an amendment as of right, or by leave of Court. Such an amendment is preferable whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. See e.g., Goble v. Marsh, 684 F.2d 12, 17 (D.C. Cir. 1982), Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, § 1214 at 106, 107 (1969). It appearing that the plaintiffs can plead a claim under the federal labor laws, dismissal on this ground is unwarranted.

In this renewed motion for summary judgment,[3] the defendants contend that the plaintiffs' claims are preempted by the federal labor statutes, and are either barred by the applicable statute of limitations, or fail to state a cognizable claim.[4] We agree.[5]

## II. DISCUSSION

 Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (1976), provides federal jurisdiction for suits involving labor contracts.[6] Union constitutions are considered "contracts" for purposes of § 301 jurisdiction. United Asso. of Journeymen & Apprentices of the Plumbing & Pipefitting Industry v. Local 334, (Plumbing & Pipefitting), 452 U.S. 615, 619–22 (1981). Thus, federal jurisdiction extends to suits against unions by its members for breach of the union's constitution. Plumbing & Pipefitting, supra (local versus international), Local U. No. 1075, supra at 184; Papianni v. Intern. Ass'n of B.S. & O.I. Workers, 622 F. Supp. 1559 (D.C.N.J. 1985). Indeed, suits raising contract claims in the labor context are preempted by § 301 jurisdiction. Allis

---

[3] In their original motion for summary judgment, the defendants argued that the plaintiffs' action was barred because the plaintiffs failed to exhaust internal union grievance procedures. In an order dated December 18, 1986, we denied the defendants' motion finding that they had failed to provide us with provisions of the union's constitution which clearly and unambiguously directed the plaintiff to exhaust such procedures. (Citing, Local U. No. 1075 v. United Rubber, Cork, Lin. and Plastic Workers of America, 716 F.2d 182 (3d Cir. 1983).) In their motion to reconsider that order, the defendants raised for the first time the issues we consider here. Therefore, we treated their motion as a renewed motion for summary judgment and gave the plaintiffs ample time to respond. Oral argument followed.

[4] Although unartfully pleaded, we will not dismiss the plaintiffs' complaint for this reason alone. We adhere to the liberal pleading requirements of the federal rules. See Conley v. Gibson, 355 U.S. 41, 43 (1957).

[5] Under Rule 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2552 (1986).

[6] Section 301(a) provides:
(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a).

Chalmers Corp. v. Lubeck, 471 U.S. 202, 105 S.Ct. 1904, 1910–11 (1985).

■■ Section 301 also provides federal jurisdiction for suits by employees against their union for unfair or discriminatory treatment. Vaca v. Sipes, 386 U.S. 171, 177 (1967); Findley v. Jones Motor Freight, Etc., 639 F.2d 953, 957 (3d Cir. 1981); Lewis v. Local U. No. 100 of Laborers' Intern. U., 750 F.2d 1368, 1374 (7th Cir. 1984). Such claims are governed exclusively by federal law even when filed in state court. Peterson v. Airline Pilots Ass'n Intern., 759 F.2d 1161, 1170 (4th Cir. 1985), cert. denied, 474 U.S. 946, 106 S.Ct. 312 (1986).

■■ This duty of fair representation arises, however, from the union's exlusive right to represent all bargaining unit members in their dealing with the employer;[7] Lewis, supra at 1376; see also Deboles v. Trans World Airlines, Inc., 552 F.2d 1005, 1014 (3d Cir. 1977) cert. denied, 434 U.S. 837 (1977), and does not come into play "regarding conduct which affects only an individual's relationship within the union structure." Smith v. Babcock & Wilcox Co. Refractories Div., 726 F.2d 1562, 1566 (11th Cir. 1984) (citations omitted). For example, it has been held that the union's duty of fair representation does not extend to its eligibility rules for strike benefits. Kolinski, supra at 481–82.

■ Since the plaintiffs' fair representation/discriminations claims fall within this exclusion, Counts II and III of their complaint must be dismissed.

■ In addition, § 301 does not provide for actions against individual defendants. Complete Auto Transit, Inc. v. Reis, 451 U.S. 401 (1981). Such suits, as the defendants' counsel conceded at oral argument, would seem to arise under the provision of § 501 of the LMRDA, 29 U.S.C. § 501 (1985). That section provides for suits by members brought on behalf of their union against union officials who have violated certain fiduciary obligations imposed by the act.[8]

---

[7] A union's duty of fair representation arises out of the exclusive representational status granted a union by section 9(a) of the NLRA, 29 U.S.C. § 159(a). See, Kolinski v. Lubbert, 712 F.2d 471, 481 (D.C. Cir. 1983) (citations omitted).

[8] These duties are set out in § 501(a) which provides in relevant part:
The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its

United States v. Boffa, 688 F.2d 919, 930–31 (3d Cir. 1982), cert. denied, 465 U.S. 1066, (1983).

■ In fact, § 501 has been applied to suits alleging the wrongful handling of strike funds. Erkins v. Bryan, 663 F.2d 1048 (11th Cir. 1981), reversing, 494 F. Supp. 732 (N.D. Ala. 1980), cert. denied, 459 U.S. 989 (1982); Agola v. Hagner, 556 F. Supp. 296, 299–300 (E.D.N.Y. 1982) (citing United States v. Robinson, 512 F.2d 491, 495 n.7 (2d Cir. 1975), cert. denied, 423 U.S. 853 (1975)). It cannot, however, be a basis for suits against the labor organization itself.[9] Sabolsky v. Budzanoski, 457 F.2d 1245, 1249 (3d Cir.), cert. denied, 409 U.S. 853 (1972). Thus, our task here is to decide whether the plaintiffs' remaining § 501 claims against the individual union representatives, and their § 301 claim against the local are viable under these facts. We find that they are not.

A. *Section 501*

Although § 501(a) creates the fiduciary duties union officers owe their union, § 501(b) establishes conditions precedent for suits brought by members alleging breach of those duties.[10] A plaintiff must first unsuccessfully demand that the union or its governing board or officers bring the action, Purcell v. Keane, 406 F.2d 1195 (3d Cir. 1969), unless such a request would be futile. Sabolsky, 457

---

members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization . . . .
29 U.S.C. § 501(a).

[9] We note that 29 U.S.C. § 413 explicitly provides for retention of the rights of union members under state law with regard to actions brought under this section. However, the plaintiffs have not articulated, nor do we know of any territorial basis for their claims against the individual defendants.

[10] Section 501(b) provides:
When any officer, agent, shop steward, or representatives of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop

F.2d at 1252–53. Second, a plaintiff must secure court permission to institute the suit by filing a verified application with the court showing good cause. Third, the "[p]laintiff must be seeking relief on behalf of the union rather than on his own behalf . . . ." Reed v. United Trans Union, 633 F. Supp. 1516, 1522 (W.D.N.C. 1986) (citing Phillips v. Osborne, 403 F.2d 826, 828 (9th Cir. 1968); see also Agola, 556 F. Supp. at 300.[11]

▉ In the instant action, the plaintiffs did not seek leave of court prior to the institution of this suit, nor did they make a demand on the union officials. The first flaw is not fatal, however, where the plaintiffs did file a verified complaint and the allegations contained within are sufficient to determine whether there is good cause. Sabolsky, supra at 1250. Since the plaintiff's have filed a verified complaint, we will not rest the resolution to this issue on these grounds.

▉ The second flaw is also not fatal where as here a demand would be futile. It is uncontroverted that the policy of denying nonpicketers strike funds was handed down by the union to be enforced by the local's representatives. See plaintiffs' exhibit 6, affidavit of Clarence Fraser. Thus, we decline to dismiss this action based on this requirement.

▉ A third flaw is fatal, however, because this suit is clearly for the benefit of the plaintiffs themselves, rather than the union. Any monies owed to the plaintiffs are alleged as a debt due to them individually. Complaint, Count I. Moreover, such monies, if

---

steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.
29 U.S.C. § 501(b).

[11] No applicable statute of limitations exists for § 501 suits since they are equitable in nature. Therefore, the equitable doctrine of laches may be plead as a bar where appropriate. See e.g., Morrissey v. Curran, 482 F. Supp. 31, 40 (S.D.N.Y. 1979), aff'd in part, rev'd in part, 650 F.2d 1267 (2d Cir. 1981) (citing Local No. 92 Int'l Ass'n of Bridge S & O.I. Workers v. Norris, 383 F.2d 735, 741 (5th Cir. 1967).) Although the defendants erroneously contend that the plaintiffs' § 501 claims are barred by the six-month statute of limitations, we do not read this as an argument that this claim is barred by laches.

recovered, would directly proceed to the plaintiffs' account. Thus, we agree with the reasoning of Judge Mishler in Agola, who, facing a similar question wrote:

> [I]n the case before us, plaintiffs' claim for wrongfully withheld strike benefit payments is essentially a jointly-made request for the recovery of individual claims. It is clear that if plaintiffs were able to bring this claim on behalf of a labor organization, as required by § 501(b), any recovery by such union would be only for the purpose of distributing the individual awards. The labor organization would serve as a mere filter, rather than as a participant in the recovery. Any benefit to the union would be non-monetary, e.g., the enforcement of the union's commitments to new members. We conclude that plaintiffs' suit is brought for the benefit of individual plaintiffs and not for the benefit of a labor organization.

556 F. Supp. at 301.

Because the plaintiffs have brought their suit for their own benefit, they have not satisfied the requirement of § 501(b), and their claims against the individual defendants will be dismissed.[12] See e.g., Reed, 633 F. Supp. at 1528. We now turn to the plaintiffs' remaining § 301 claim against the union.

B. *Section 301*

■■■ The defendants argue that any § 301 claim for breach of the union's constitution is time barred. Section 301, however, has no applicable statute of limitations within its provisions. Delcostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Generally, the Supreme Court has concluded that analogous state statutes of limitations should be applied except where such state statutes of limitations are unsatisfactory vehicles for the enforcement of federal law. Id. at 158–161.

■■■ One such situation where the Court has held state statute of limitations inapplicable are in the so called hybrid actions involving an employee's suit against the employer for breach of the collective bargaining agreement, joined with the employee's suit

---

[12] It may be that the plaintiffs have no standing to maintain a § 501 suit since they may no longer be members of the local or union as defined by 29 U.S.C. § 402(o). Since the defendants have not raised this issue, our decision does not rest on the resolution of this question.

163

against the union for breach of its duty of fair representation. Id. at 169. In such cases, the Court has applied the six-month limitations period of § 10(b) of NLRA, 29 U.S.C. § 160(b).[13] In its reasoning, the Court has relied upon the fact that such unfair representation claims "resemble" and "overlap" unfair labor practice claims brought under the NLRA's jurisdiction. Id. It has concluded that the federal policy of rapid resolution of labor disputes was better served in such cases by the invocation of the six-month statute of limitations. The Court wrote in Delcostello:

> We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy. On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods. Nevertheless, when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law . . . .

Id. at 171–72 (citations omitted). See also, West v. Conrail, 780 F.2d 361 (3d Cir. 1985); Taylor v. Ford Motor Co., 761 F.2d 931 (3d Cir. 1985), cert. denied, 474 U.S. 1081, 106 S.Ct. 849 (1986); Ohare v. General Marine Transport, 740 F.2d 160 (3d Cir. 1984), cert.

---

[13] That section states in relevant part:

(b) Whenever it is charged that any person has engaged in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: Provided, that no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge . . . .
29 U.S.C. § 160(b).

denied, 469 U.S. 1212 (1985); Perez v. Dana Corp., Parish Frame Div., 718 F.2d 581 (3d Cir. 1983).

 In the case at bar, the plaintiffs' remaining § 301 claim is a straight breach of constitution/contract claim. However, to the extent their allegations stem from the fact that they were denied strike funds because they refused to picket, it is analogous to an unfair labor practice claim under § 8(b)(1) of the NLRA, 29 U.S.C. § 158(b)(1).

Section 8(b)(1) makes it an unfair labor practice for a union to restrain or coerce employees in the exercise of their rights under § 7 of the NLRA, 29 U.S.C. § 157. That section grants employees the right to engage or refrain from participating in concerted activities.[14] See Metropolitan Edison Co. v. NLRA, 460 U.S. 693 (1982). Picketing is one such activity. Baldwin v. Local 843 Intern. Broth. of Teamsters, 562 F. Supp. 36, 42 (D.N.J. 1982). Thus, discriminatory treatment based on the refusal to picket resembles an 8(b)(1) claim.[15] Since we believe that the federal policies at stake in resolution of such a claim would be better served by the limitations period set out in § 10(b), and we find that § 10(b)'s rule bears a closer analogy to the interests inherent in those federal policies than any territorial statute, we conclude that that application of § 10(b)'s six-month limitation period is mandated.

Our conclusion rests on the decision of the Third Circuit in Fed. of Westinghouse Ind. v. Westinghouse Elec. Corp., 736 F.2d 896 (3d Cir. 1984), where the Court addressed the issue of the applicable statute of limitations for straight § 301 claims. Citing Delcostello, supra at 158 n.12, the court noted that it is now an open question whether the rule announced in United Auto Workers v. Hoosier, 383 U.S. 696, 704–705 (1966) (applying state statute of limitations to pure 301 claims) is still applicable. The Westinghouse court,

---

[14] Section 7 provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title. 29 U.S.C. § 157.

[15] Claims under § 301(a) for breach of labor contract are not preempted by the NLRA even though the conduct giving rise to the claim is concededly an unfair labor practice. See Lewis, supra at 1372 (citing Smith v. Evening News Ass'n, 371 U.S. 195 (1962)).

therefore, applied the six-month statute of § 10(b) rather than six-year state statute for actions to compel arbitration. 736 F.2d at 902. The heart of the court's reasoning was that an action to compel arbitration after internal grievance steps have been exhausted is similar to the NLRA's method of resolving such disputes. Id. It concluded that it made sense to have a common statute of limitations for unfair labor practice charges and for actions to compel arbitration. Id. It also noted that application of six-year state statute stretches out industrial disputes for longer than the recent cases have felt desirable. Id. at 901 (footnote omitted).

We find this reasoning directly applicable to this case. As noted supra at 12, the plaintiffs' allegations bear a close resemblance to an unfair practice claim under the NLRA. Their claim is actually one for discriminatory treatment by the union. Indeed, they admit that others who did not picket were not denied such funds. (Affidavit of Thelemaque ¶9.) Under these circumstances, we believe the Circuit would follow the reasoning employed by Chief Judge Gibbons in Westinghouse, and apply the six-month statute.

In so finding, we recognize that the District of New Jersey in Papianni concluded oppositely on a similar question. 622 F. Supp. at 1575 n.10. That court argued that the Westinghouse opinion is distinguishable because the court there faced an arbitration issue where there is an inherently strong federal policy. The Papianni court felt that the fact the claim at issue it faced constituted an unfair labor practice did not make it any less a breach of contract matter. Id. at 1575.

We believe, however, that the reasoning of the Papianni court simply flies in the face of the Third Circuit dicta in Westinghouse. We reemphasize that court's statement. "Application of a six-year state statute of limitations stretches out industrial dispute far longer than most recent cases have deemed desirable." 736 F.2d at 901 (footnote omitted). We believe this consideration controlling.[16] Cf., United States v. Alexander, 748 F.2d 185 (3d Cir. 1984), cert. denied, 472 U.S. 1027, 105 S.Ct. 3501 (1985).

Concluding as we do that the six-month statute of limitations is applicable here, we must dismiss the plaintiffs' 301 claim. Whether we deem the statute running from the occurrence of the first wrong, April 1984 (affidavits of Rodriguez; Fraser), or from end of the lockout in March 1985, the six-month period expired long

---

[16] If we held otherwise, the territory's 6 year statute of limitations applicable to contract actions would apply. See 5 V.I.C. § 31(3)(A) (1967).

before the filing of this action on June 4, 1986. The plaintiffs conceded this point at oral argument.

## III. CONCLUSION

 For the foregoing reasons, we hold that the six-month statute of limitations of § 10(b) of NLRA applies to a dispute by an employee against his union for denial of strike funds in breach of the union's constitution. Because the plaintiffs' § 301 action is not timely, and their claims arising under § 501 are not brought for the benefit of the union, they shall be dismissed.

## SUMMARY JUDGMENT

THIS MATTER is before the Court on the motion of the defendants for summary judgment. Having filed a memorandum opinion of even date herewith, and the premises considered, now therefore it is

ORDERED and ADJUDGED:

THAT the motion of the defendants for summary judgment is, hereby and the same, GRANTED, and further

THAT the plaintiffs' complaint is DISMISSED WITH PREJU-DICE.